[Crim. No. 14356.   Second Dist., Div. One.   Aug. 29, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES
HARLEY LASITER, Defendant and Appellant.

Ronald R. Schoenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and John C. Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

WOOD, P. J. — In two informations (consolidated for trial), defendant was accused in three counts of armed robbery. He denied allegations of the information that he had been convicted previously of a felony (robbery). In a nonjury trial he was found guilty as charged. No disposition was made of the alleged prior conviction. He appeals from the judgment and the sentence.

Appellant contends that he was denied due process of law in that the identification of him by one of the robbery victims was tainted by an unfair lineup; the identification of defendant in the other robberies was tainted by "suggestive" photographs; and the court erred "in considering the identifications cumulatively."

It was stipulated that the People's case might be submitted on the transcripts of the preliminary examinations.

### Robbery of Patricia Pelonis

Patricia Pelonis, an employee at a restaurant, testified in substance as follows: On January 9, 1966, about 4 p.m., she went to a bank in Huntington Park to deposit, in the night deposit slot at the rear of the bank, two bags which contained receipts from the restaurant. After she deposited one of the bags in the slot, she heard a noise, and saw the defendant who was about 6 feet from her. He jumped at her, and grabbed the other bag which contained about $5,000. Defendant started to leave, and she returned to her car, but before she entered it, the defendant came to the car, hit her in the face, pulled out a

gun, opened the door of the car, and said: "Your car will be around the corner." Defendant then drove away in the car. She reported the robbery (and described the defendant) to the police. The defendant (sitting at counsel table) was the person who robbed her.

On cross-examination, she testified in part that defendant wore a hat, a leather jacket, dark pants, and dark glasses when he robbed her. On cross-examination when she was asked questions regarding a "lineup" at the police station, the deputy district attorney made an objection thereto on the ground that the matter was beyond the scope of the direct examination. The objection was overruled, and she testified further, as follows: That subsequent to the robbery she viewed a lineup at the police station; there were about six men in the lineup; the men wore hats and dark glasses; they were of similar height and wore similar clothes; five of the men were of Latin-American extraction, and one of them was of Anglo-Saxon extraction; the minute she saw defendant in the lineup, she said: "That is him"; and defendant was the Anglo-Saxon man. (Defendant did not object to any of her testimony regarding identification of the defendant.)

### Robbery of James Hancock

James Hancock, the controller of a market in Whittier, testified in substance that on December 30, 1966, about 10:40 a.m., he and Marjorie Wicher, a cashier at the market, went in a car to a bank and obtained two bags of money (about $14,834) for the market's operations. After returning to the market's parking lot, he parked the car at the side of the market, and they walked toward the front of the market. Defendant "came up from between two parked cars," grabbed Mrs. Wicher by the arm, and told her to "stay there." Defendant then pointed a gun at him and said: "I want that money." He handed the money to defendant and defendant said: "Get back there and don't look back." They turned toward the rear of the market, and defendant gave him a slight push. He heard defendant run away, and then he saw defendant drive away in a car.

On cross-examination, Mr. Hancock testified that after the robbery (December 30, 1966) and prior to February 15, 1967, a police officer showed him approximately six photographs; some of the persons depicted therein were of Mexican descent, but most of them were Caucasian; he identified one of the persons (defendant) as the person who had robbed him; he

remembered defendant's features, and immediately recognized defendant in the photograph; the defendant was wearing a baseball-type cap and horn-rimmed glasses when the robbery occurred; the defendant, as shown in the photograph, was wearing dark glasses, but was not wearing a baseball cap; about a week before he (witness) saw those photographs, another officer had shown him photographs of other persons; he did not have to see the photograph in order to refresh his memory of defendant; and he is positive that defendant was the man who robbed him.

Mrs. Wicher, on direct examination, testified that defendant was the man who robbed Mr. Hancock. (Her testimony regarding the circumstances of the robbery was similar to Mr. Hancock's testimony.) On cross-examination, she testified that, after the robbery, she was shown a group of photographs; none of the persons in the photographs was defendant; about a week later she was shown another group of photographs; there were no Mexicans in the photographs; one of the men in the photographs wore dark glasses and a baseball cap; she was not sure whether the man in the photograph was the defendant; and she saw defendant in the hall of the courtroom about a week before the preliminary examination, and she "recognized him." (Defendant did not object to, or move to strike, any of the testimony of Mr. Hancock or Mrs. Wicher regarding identification of the defendant.)

### Robbery of Mildred Parker

Mildred Parker, a cashier at a market in Downey, testified that on September 17, 1966, about 11 p.m., while she was working at the checkstand, a man came to her, reached under his sweater and pants, took out a gun, and said: "This is a stickup," and "If you do as I tell you, no one will get hurt. Don't make any noise." Then he said: "Turn around to the register and give me all the money." She said: "Do you want the money in a bag?", and he replied in the affirmative. She reached under the counter to get a bag, and he grabbed it from her hands. Another man came there and took the money (about $2,000) from the first man and they started walking out together. The first man told her to follow him or he would shoot her. She followed the two men. She believed that the defendant was the man who took the money from the first man (the man with the gun).

On cross-examination, she testified that defendant was small and light, and wore black pants, a striped sweater, and a hat; about a week after the robbery, and on two occasions there-

after, the police showed her "quite a few" photographs; she did not make "a positive identification" of defendant from the photographs; and her feeling is that defendant was the man who took the money from the man who robbed her.

Florence High testified that on September 17, 1966, she was a customer at the All-American Market (same market referred to by preceding witness); she was in the check line, had made a purchase, and was waiting for the cashier to put the purchased goods in a bag; a man approached the cashier and told the cashier that it was a stickup and to do as she was told; she (witness) started to leave, and the defendant stepped in front of her and told her to go back where she was, do as she was told, and to turn around and not look at him; and she followed his instructions.

On cross-examination, she testified that she was within two feet of defendant when he spoke to her; he wore sunglasses and was of slight build; about a week after the robbery, the police showed her "quite a few" photographs; she picked out "one" which was "possibly the person"; a few weeks later, they showed her photographs of eight or ten persons; there were photographs of the front view, and side view, of each person; and the first time she saw defendant after the robbery was in the hall of the courtroom. (Defendant did not object to, or move to strike, any of the testimony of Mrs. Parker or Mrs. High regarding identification of the defendant.)

Defendant testified in substance that he did not perpetrate the robberies; he has no recollection of his "whereabouts" on the dates when the robberies were perpetrated; he was shot many times while he was committing a robbery in 1959, and he has not perpetrated any robberies since that time; he does not believe that anyone would perpetrate a robbery after what he went through; he was in a lineup while wearing a hat and dark glasses; photographs were taken of him while he wore a hat and dark glasses; he wears turtle-neck sweaters because he has a hole in his neck; his height is "five eight," and his weight is "one thirty five."

Appellant contends that the in-court identification of defendant by Patricia Pelonis was tainted by an unfair lineup. He argues that the lineup was unnecessarily suggestive and denied defendant due process of law. He cites *People v. Caruso,* 68 Cal.2d 183, 187 [65 Cal.Rptr. 336, 436 P.2d 336], wherein was said: "We can only conclude that the lineup was 'unnecessarily suggestive and conducive to irreparable mistaken identification' (*Stovall* v. *Denno* (1967)

*supra,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]), and we hold that its grossly unfair makeup deprived defendant of due process of law.'' The *Caruso* case is distinguishable from the present case. In the *Caruso* case, two employees of a store were in a parked automobile, ready to go away in the automobile for the purpose of depositing money which they had in their possession; and at that time a man, wearing a dark jacket, a snap brim hat, and a handkerchief over his nose, came to the automobile, exhibited a pistol, took the money from the employees, and then entered a nearby black Ford automobile which was driven away by another man. The two employees (witnesses) observed the driver of the other automobile about ''five to six seconds.'' The total time in the robbery episode was not more than 30 seconds. The two witnesses described the driver as big, with dark wavy hair and a dark complexion. Neither witness could describe the driver's clothing. Another witness therein who, soon after the robbery, saw a man hurriedly go away from a black Ford automobile which was parked about four blocks from the place of the robbery, could not identify the defendant as the man he had seen. Soon after the robbery, another witness saw a man, who was in the area of the parked Ford, enter the passenger side of another automobile, but the witness could not identify the defendant as that man. In the *Caruso* case, it was said that the two victims of the robbery ''obtained no more than a fleeting glance at the robbery car,'' and that the lineup was conducted under circumstances ''which could only have suggested'' to the witnesses (victims) that the defendant was the man to be charged with the offense. In the *Caruso* case, the defendant was of imposing stature—6 feet tall and weighing 238 pounds, was of Italian descent, had a very dark complexion and dark wavy hair; whereas, the other men in the lineup did not physically resemble the defendant—they were not his size, were not dark complexioned, and did not have dark wavy hair. In the present case, the defendant and the other men in the lineup wore hats and dark glasses, were of similar size, and wore similar clothes. In the present case there was evidence that the defendant was Caucasian and the other men were of Latin descent, but there was no evidence that the defendant and the others in the lineup were noticeably of different sizes or complexions, or of different physical characteristics. Also, in the present case, Miss Pelonis (victim) observed the robber approximately five minutes and she testified in detail as to the manner in which the robber was

dressed—that he wore a hat, leather jacket, dark pants, and dark glasses. She testified, in referring to the lineup, that: "The minute I saw him, I said, 'That is him.'" The lineup in the present case was very much different from the lineup in the *Caruso* case. The lineup herein was not unfair. The in-court identification of defendant by Miss Pelonis was not tainted by an unfair lineup. It is to be noted that her testimony in chief did not refer to a lineup—the prosecution presented evidence only as to in-court identification. Her testimony regarding a lineup was elicited on cross-examination, and over the objection of the prosecution. Furthermore, the defendant did not object to, or move to strike out, any of Miss Pelonis' testimony regarding identification of the defendant. In *People* v. *Fairchild*, 254 Cal.App.2d 831, 840-841 [62 Cal. Rptr. 535], wherein there was a contention to the effect that the trial court should not have received testimony of the victim as to identification of the defendant in a "one man lineup," the reviewing court said (p. 841) : that any (such) error was waived by defendant's failure to object to the testimony regarding the identification. In any event, in the present case, the evidence as to identification was amply sufficient to support a finding that the lineup was fair and legal.

Appellant further contends that the in-court identification of defendant by Mrs. Parker and Mrs. High (robbery at checking stand of market), and the in-court identification of him by James Hancock and Marjorie Wicher (robbery in parking lot of market), were tainted by unfair and suggestive methods of exhibiting identification photographs to those witnesses prior to the trial. He cites *People* v. *Pedercine*, 256 Cal.App.2d 328, 335-337 [63 Cal.Rptr. 873], wherein it was held that the method of exhibiting identification photographs therein was improper. In that case it was said that the photographs were "obviously rigged." It was also said therein that "it was not the prosecution which brought the condemned method of obtaining the identification into evidence; it was the defendant herself [on cross-examination of the witness]." In view of other evidence therein, it was held that the admission of the evidence relating to the photographs was harmless error.

In the present case, defendant did not object to, or move to strike, any of the testimony of Mrs. Parker, Mrs. High, Mr. Hancock, or Mrs. Wicher regarding identification of the defendant. With reference to the robbery of Mrs. Parker, she testified, on cross-examination, that prior to the trial police

officers showed "quite a few" photographs to her on two occasions and that she did not make a positive identification from the photographs. There is no showing that the photographs were an unfair selection or group of photographs for identification purposes. Mrs. Parker testified in detail regarding defendant's appearance, and the clothing worn by him, when the robbery was committed. Mrs. High also testified in detail regarding defendant's appearance and clothing when he robbed Mrs. Parker. On cross-examination, Mrs. High testified that the police showed "quite a few" photographs to her on two occasions prior to the trial, and on one occasion she picked out "one" who was "possibly the person." With reference to the robbery of Mr. Hancock, he and Mrs. Wicher testified, on cross-examination, that the police showed photographs to them on two occasions prior to the trial. According to Mr. Hancock's testimony, the second group of photographs included photographs of six persons, most of whom were Caucasians and some of whom were of Mexican descent; he remembered defendant's features, and immediately recognized defendant in a photograph; he did not have to see the photographs in order to refresh his memory of the defendant; and that the defendant wore a baseball cap and horn-rimmed glasses during the robbery but, as shown in the photograph, he was wearing dark glasses, and was not wearing a baseball cap. There was no evidence as to the size, complexion, or other physical characteristics of the persons in the photographs. According to the testimony of Mrs. Wicher, there was no Mexican in the second group of photographs which the officers showed to her; one of the men in that group of photographs wore dark glasses and a baseball cap; and she was not sure whether that man was the defendant. Appellant's contention regarding the in-court identification of defendant by the witnesses to the Parker and Hancock robberies is not sustainable.

Appellant further contends that the court erred "in considering the identifications cumulatively." At the hearing of defendant's motion for a new trial, the judge said: "There were five people that identified the defendant. I consider that persuasive evidence." Appellant argues that the statement indicates that the judge "considered the cumulative effect of the identifications in reaching his verdict," that is, that the judge in effect considered the identification evidence relating to each robbery in finding the defendant guilty of each of the other robberies. The statement of the judge was made at the

hearing of the motion for a new trial (on September 15, 1967), which was more than one month after he had announced his findings (on August 11, 1967) that defendant was "guilty on all these counts." The identification evidence as to each robbery was sufficient to identify the defendant as the robber, or one of the robbers, therein. The statement of the judge, upon the motion for a new trial, is not to be regarded as meaning that he considered that a witness who was not present at a particular robbery had identified the person who committed that robbery. Although the reference to five persons was "in form" a collective reference to identification witnesses, the reference is not to be regarded as meaning that the identification evidence as to the three counts was applied cumulatively to each count. There is no merit to this contention.

Affirmance of the judgment is affirmance of the sentence. The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied September 25, 1968, and appellant's petition for a hearing by the Supreme Court was denied October 23, 1968. Peters, J., was of the opinion that the petition should be granted.